**FAJARDO SHOPPING CENTER, S.E., Plaintiff,**

v.

**SUN ALLIANCE INSURANCE COMPANY OF PUERTO RICO, et al, Defendants.**

**No. 93–1298(SEC).**

United States District Court, D. Puerto Rico.

Jan. 27, 2000.

---

Edward M. Borges, Borges Law Center, PSC, San Juan, PR, Luis E. Gonzalez–Ortiz and David Rive–Power, O'Neill & Borges, San Juan, PR, for plaintiff.

Luis A. Gonzalez–Perez, Orlando Fl, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

On February 24, 1993 (**Docket # 1**), Plaintiff Fajardo Shopping Center, S.E (hereinafter "FSC") filed this action against defendant Sun Alliance Insurance Company of Puerto Rico (hereinafter "SAIC") to recover insurance policy benefits in connection to the damage to certain property sustained during the passage of Hurricane Hugo over Puerto Rico in 1989. After nearly five years of discovery this Court granted summary judgment in FSC's favor on the issues of liability and damages. *See Fajardo Shopping Center v. Sun Alliance Ins. Co.*, 999 F.Supp. 213 (D.P.R.1998) (hereinafter *"Fajardo Shopping I "*). We ordered SAIC to pay FSC $1,301,856.77, and awarded FSC $868,-826.60 in prejudgment interest. Also, upon finding that SAIC had acted with obstinacy, we awarded attorney's fees to FSC, as mandated by Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure. *See id.* at 233. SAIC appealed.

Pending is FSC's particularized fees request, **(Dockets # 116 and # 129)**, which was held in abeyance pending the outcome of SAIC's appeal. **(Docket # 124)**. On February 3, 1999, the First Circuit affirmed both our grant of summary judgment and award of prejudgment interest and attorney's fees. **(Docket # 127)**. Having the appellate proceedings concluded, we are ready to entertain FSC's request. The historical facts and tortuous procedural background are set forth in our opinion in *Fajardo Shopping I*, and the First Circuit's opinion in *Fajardo Shopping Center v. Sun Alliance Ins. Co.*, 167 F.3d 1 (1st Cir.1999) (hereinafter *"Fajardo Shopping II"*). Therefore, we shall not recount them, except when necessary for the matter at hand.

**Background**

In *Fajardo Shopping I*, we granted FSC ten days to file a memorandum detailing the amount of fees requested. SAIC was granted ten days thereafter to reply. *See* 999 F.Supp. at 214. On March 2, 1998, FSC complied and sought an award in the amount of $273,049.55. **(Docket # 116)**. This figure represents the actual amount of fees that FSC paid its legal representative, the firm of O'Neill & Borges, in connection with this suit. SAIC duly opposed this request as unreasonable on the basis that "Rule 44.1(d) does not support the inference that the sum to be awarded in attorneys fees to the prevailing party must coincide with the attorneys fees incurred by the prevailing party," and that "[FSC's] prayer for all the attorneys fees incurred is clearly contrary to the specific guidelines set forth by the Puerto Rico Supreme Court...." **(Docket # 117, at 3)**. In support of this latter argument, SAIC submitted that "the instant case involved multiple complex questions of fact and law ...," and that "it was [FSC] that unjustifiably delayed this case by moving for a continuance of the trial scheduled for February 18, 1995, under clearly false pretenses." **(Id.)**. This continuance, SAIC contended, "was merely a strategy to avoid having to go to trial with [its] original experts.... Accordingly, more tha[n] 50% of the attorneys fees incurred are solely attributable to the dilatory tactics of [SAIC] ..." **(Id.)**.

FSC subsequently requested an additional $73,084.30 in fees incurred from March 1, 1998, through November, 1998, and $1,344.50 incurred in February, 1999. Furthermore, FSC asked the Court to consider SAIC's conduct prior to the filing of the complaint in fixing the fees awards.[1] In total, FSC sought an award "in the range of $375,000.00." **(Docket # 129, at 3)**. SAIC also opposed FSC's request for additional post-complaint fees as unreasonable, and FSC's request for pre-complaint fees as moot. **(Docket # 130)**.

**Applicable Law/Analysis**

 Rule 44.1(b) of the Puerto Rico Rules of Civil Procedure in relevant part provides that, "[i]n the event that any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct." P.R.Laws Ann. tit. 32, app. III R. 44.1(d) (Supl.1997). Because Rule 44.1(d) speaks in imperative, once the court has made a finding that a party has acted with obstinacy, the imposition of attorney's fees is obligatory. *See, e.g., Fajardo Shopping II*, 167 F.3d at 14. The purpose behind the rule "is to penalize 'a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation.'" *Dopp v. Pritzker*, 38 F.3d 1239, 1252 (1st Cir.1994) (quoting *Fernandez v. San Juan Cement Co.* 118 D.P.R. 713, 718 (1987)). *See also Departamento de Recreacion y Deportes v. Asociacion Recreativa Round Hill, Inc.*,

---

1. FSC spent approximately $45,000 in legal services before filing the complaint. While it is not entirely clear from its amplified request for attorney's fees, FSC seems to be asking the Court to award it part of this amount. **(Docket # 129, at ¶ 7)**.

99 TSPR 135; *Blas Toledo v. Hospital Nuestra Señora de la Guadalupe,* 98 TSPR 111. Thus, under Rule 44.1(d), a fees award is "payable only if the offending party's behavior 'result[s] in a litigation that could have been avoided'; or if the behavior 'prolongs [the litigation] needlessly'; or if it 'obliges the other party to embark on needless procedures.'" *Dopp,* 38 F.3d at 1253 (quoting *Fernandez,* 118 D.P.R. at 718–19).[2] Moreover, inasmuch as a party's conduct may be characterized as obstinate at one stage of the case but not at another, and since a particular form of conduct may be found to be obstinate in one case but not in another, "it is wise for the trier to take into account the case's personality." *Id.* at 1253–54. We have already determined, and the First Circuit affirmed, that SAIC's obstinacy warrants the imposition of attorney's fees. *See Fajardo Shopping I,* 999 F.Supp. at 233–34; *Fajardo Shopping II,* 167 F.3d at 14–15. Therefore, the only issue for the Court is to determine the amount of fees that should be imposed.

■■■ While the criteria used to determine whether or not a party has acted with obstinacy are more or less straightforward, the criteria used to assess the amount of the corresponding fees award is far from it. On the one hand, the Supreme Court · of Puerto Rico has consistently held that "nothing in the wording of ... Rule 44.1(d) allows the reasonable inference that the amount the obstinate or frivolous party shall bear must necessarily match the actual attorney's fees paid by the prevailing party." *Corpak, Inc. v. Ramallo Bros. Printing, Inc.,* 125 D.P.R. 724, 738 (1990) (Slip P.R. Offic. Trans. at 11) (hereinafter *"Corpak "*). *See also Santos Bermúdez v. Texaco P.R., Inc.,* 123 D.P.R. 351, 357 (1989); *Asociación de Condóminos v. Trelles Reyes,* 120 D.P.R. 574, 579 (1988). On the other hand, the Court has declined to adopt any particular method for calculating fees awards. *See Corpak,* 125 D.P.R. at 734. Instead, the Court has held, trial courts "must bear in mind *that the degree or intensity of the obstinate or frivolous conduct is the test or determining or critical factor* to be considered when calculating the attorney's fees that the obstinate or frivolous losing party shall bear...." *Id.* at 738 (citations omitted) (Slip P.R. Offic. Trans. at 12).[3] *See also Revlon Realistic, Inc. v. Las Americas Trust Co.,* 135 D.P.R. 363 (1994); 94 J.T.S. 27, at 11614 (hereinafter *"Revlon "*). Notwithstanding, trial courts may also take into account a host of other factors, such as "the nature of the action, the questions of law involved, the amount at issue, the time spent, the efforts and professional activity needed for the case, and the skills and reputation of the lawyers involved" when calculating an attorney's fees award. *Corpak,* 125 D.P.R. at 738 (Slip P.R. Offic. Trans. at 11–12); *Revlon,* 94 J.T.S. at 11614. It is certainly mind-boggling trying to fathom the way to determine the reasonable amount of attorney's fees warranted in any given case by referring to such a general consideration as the "degree or intensity" of the obstinate conduct, while also taking into account "the time spent, [and] the efforts and professional activity needed for the case," without the

---

2. As stated by the First Circuit:
 The rudiments of obstinacy are more or less straightforward:
 A finding of obstinacy requires that the court determine a litigant to have been unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigant unnecessary expense and delay.
*Dopp v. Pritzker,* 38 F.3d 1239, 1252 (1st Cir. 1994).

3. It is this "degree or intensity" of the obstinate conduct the factor which, on appeal, the Supreme Court of Puerto Rico "will first and foremost take into consideration when deciding whether the trial courts have correctly exercised the discretion granted by ... Rule 44.1(d)." *Corpak, Inc. v. Ramallo Bros. Printing, Inc.,* 125 D.P.R. 734 (1990) (Slip P.R. Offic. Trans. at 12).

aid of any guiding method.[4] However, it is against this backdrop that we must determine the fees award that should be granted to FSC in this case.

## The "Degree or Intensity" of the Obstinate Conduct

■ First and foremost, as directed by the Supreme Court of Puerto Rico, we consider "the degree or intensity of the obstinate . . . conduct" displayed by SAIC. *Corpak*, 125 D.P.R. at 738 (Slip P.R. Offic. Trans. at 12). If a party's obstinacy is determined using factors such as whether the party's behavior results "in a litigation that could have been avoided; or if the behavior prolongs [the litigation] needlessly; or if it obliges the other party to embark on needless procedures," *Dopp*, 38 F.3d at 1253 (quoting *Fernández*. 118 D.P.R. at 718–19) (internal quotations omitted), then the degree of the party's obstinacy must be measured by the circumstances surrounding those factors. For example, as the decisions by the Supreme Court of Puerto Rico in *Revlon* and *Corpak* suggest, the amount of the fees award should be directly proportionate to the duration of the litigation. Thus, that a case is disposed of through summary judgment rather than at trial bears favorably on the losing party's conduct by mitigating the degree of obstinacy permeating such conduct. *See Revlon*, 94 J.T.S. at 11614; *Corpak*, 125 D.P.R. at 741. This reasoning, of course, is premised on the assumption that summary judgment is granted at an early stage of the litigation. *Cf. Corpak*, 125 D.P.R. at 741.

In this case, SAIC's conduct can be conservatively deemed to have scored two out of three on the list of factors to be considered in the threshold determination of obstinacy, which result, under the circumstances, is certainly bad. Even if we were to accept SAIC's contention that the discrepancy in the amount of the damages initially claimed by FSC and the resulting award by the Court shows that SAIC was "justified in defending this action," (**Docket # 130, at ¶ 2**), SAIC cannot escape the fact that it needlessly prolonged the life of this suit, thereby forcing FSC to embark in needless proceedings and incur in unnecessary expense and delay. As stated in our opinion and order in *Fajardo Shopping I*:

Plaintiff specifically alleges that after Hurricane Hugo struck the Island in 1989, defendant unreasonably refused to settle this claim for over three years, while the property's losses increased and plaintiff was forced to hire more experts and incur in additional expenses. Even after the suit was filed in 1993, and until now, defendant has insisted on asserting that there is no coverage. Its only settlement offers have simply been unreasonable, since they have merely covered a fraction of the damages proposed by plaintiff. Furthermore, after agreeing to the appointment of a Special Master, defendant has objected to his undertakings every step of the way. . . .

---

4. More so if one considers the Court's most recent decisions pertaining to attorney's fees awards under Rule 44.1(d). For example, in *Revlon Realistic, Inc. v. Las Americas Trust Co.*, 135 D.P.R. 363, 94 J.T.S. 27, the Court reduced to $5,000 an award of $10,000, taking into consideration that the amount in controversy was only $67,000, and that trial was not required because the case had been disposed of through summary judgment. The Court, however, did not state what weight did it give to the "degree or intensity" of the losing party's obstinacy, nor did it explain the method by which it arrived at the sum of $5,000. *See id.* at 11614. In *Orta v. Padilla Ayala*, 131 D.P.R. 227 (1992), the Court slashed an award of $60,000 to $10,000, simply because the $60,000 award was "excessive." *Id.* at 259. In *Corpak*, the Court reduced to $5,000 an award in the amount of $26,000, because the latter "did not correspond to the degree of obstinacy displayed by the [losing party,] and [because] it [wa]s evident that said amount [did not] bear[ ] . . . [any] proportion to the brevity of the court proceedings in th[e] case, which was disposed of through . . . summary judgment. . . ." 125 D.P.R. at 741 (Slip P.R. Offic. Trans. at 14). Again, the Court did not explain the method by which it determined that $5,000 did correspond to the degree of the obstinacy displayed by the losing party.

Defendant's opposition to this claim is merely limited to arguing that it has been diligent in litigating this case, that the evidence clearly proves that it is not liable for the damages caused by Hugo, and that if anyone has been obstinate throughout this litigation, it is plaintiff itself. Yet again, defendant has failed to propound any evidence to demonstrate how, other than by requesting two continuances of the trial for legitimate purposes, plaintiff has in any way contributed to the unreasonable delays in the resolution of this case.

We believe that the record speaks for itself. Defendant has clearly engaged in one dilatory tactic after another, including objecting to every single report rendered by the Special Master, insulting him, making conclusory statements without any support whatsoever, and even arguing that the Court has deprived him of rights which [it] either waived or did not adequately preserve.

999 F.Supp. at 233–34. Moreover, we also found that SAIC had at times acted in bad faith. *See id.* at 220 (noting that SAIC's untimely submission of its construction cost estimate to the special master prior to the latter's presentation of his report and recommendation "exemplified [SAIC's] lack of good faith").

On appeal, the First Circuit found that we had not abused our discretion "in making a threshold determination of obstinacy" and thus affirmed our grant of attorney's fees. *Fajardo Shopping II,* 167 F.3d at 15. In addition to siding with our determination that SAIC had been "unreasonably adamant" and "stubbornly litigious" by refusing to settle the claim involved in this case, the circuit court also found our determination of obstinacy to be supported by:

(1) SAIC's original failure to timely submit names of candidates for appointment as special master in accordance with the court's order; (2) its subsequent barrage of unwarranted allegations regarding the ultimate appointee's "lack of objec-

tivity, neutrality and clear bias in favor of the plaintiff" ...; (3) its unsubstantiated allegations that the special master's findings were "nothing more than speculation" ...; (4) its uncalled for allegations that "as a matter of fact ... [Special Master Murati] was not qualified to make most of the recommendations contained in the report" ...; and (5) its adamant refusal to participate in the discovery process conducted by the special master. SAIC's refusal to cooperate forced the special master to revise his report and recommendation three times, further increasing the costs of this litigation. SAIC's personal attacks on Murati caused him to suspend his duties and file a separate motion in defense of his work. In sum, all of these actions by SAIC wasted considerable time and caused the court and FSC unnecessary expense and delay.

*Id.*

All the aforementioned circumstances demonstrate that the "degree or intensity" of SAIC's obstinate conduct was inexcusably high, and that it extended to the entire duration of the case.

**A Host of Other Factors**

In our opinion and order in *Fajardo Shopping I,* we characterized this case as one "of insurer liability, caught in the midst of a litigation nightmare...." 999 F.Supp. at 234, and while it certainly presented "complex engineering questions of fact," it did not involve any complex or novel questions of law. The amount at issue, moreover, was considerable (nearly two million dollars claimed and close to one and a half million dollars awarded). As the Supreme Court of Puerto Rico's decision in *Revlon* suggests, the fees award should be directly proportionate to the amount claimed. *See Revlon,* 94 J.T.S. at 11614. What the Court has kept to itself, however, is the method for calculating such proportion, and the amounts involved in the most recent decisions offer no guidance. For example, in *Revlon,* a case involving a $67,000 claim, an award of $5,000

(roughly 7.50% of the amount claimed) was found reasonable. But in *Corpak*, a suit involving a $500,000 claim, the same $5,000 (a scant 1% of the amount claimed) was also deemed reasonable.[5] The only discernible difference in both opinions—since the underlying facts of *Corpak* are lacking in the Court's opinion—is that the offending party in *Revlon* was the defendant, whereas in *Corpak*, the offending party was the plaintiff. This difference is relevant in the computation of the amount of fees to be awarded, for, as FSC notes, "a policy of restricting or reducing attorneys fees awarded to [a] plaintiff would encourage defendants not to pay or comply, and otherwise force litigation, knowing that any attorneys fees or penal amounts will be limited to nominal amounts by the courts." (**Docket # 120**).

The efforts and professional activity needed for this case also were significant, particularly in connection to the special master's job, which was particularly made hard by SAIC's continuous personal attacks and baseless objections. Moreover, in prosecuting this action, FSC's attorney's spent more than 2,000 hours. (**Docket # 116, Exhibit A**). Finally, FSC's legal counsel, the firm of O'Neill & Borges, enjoys widespread reputation in the San Juan area for the quality of its services.

Taking into consideration (1) the inexcusably high degree of obstinacy displayed by SAIC throughout the entire life of this case, (2) SAIC's lack of good faith in cooperating with the special master, its personal attacks on him and the continuous baseless objections to his undertakings, (3) the strenuous efforts and professional activity needed for this case, (4) the considerable amount in controversy ($1,944,-356.73), (5) the considerable amount of time spent by FSC's attorneys in the prosecution of this case (2,311.13 hours), and (6) the reputation of FSC's counsel, we find that the amount of the fees imposed upon SAIC should match the amount that FSC paid in legal services since this action was filed.[6] This determination is not contrary to the rule reiterated by the Supreme Court of Puerto Rico in *Corpak* that "nothing in the wording of . . . Rule 44.1(d) allows the reasonable inference that the amount the obstinate or frivolous party shall bear must necessarily match the actual attorney's fees paid by the prevailing party." 125 D.P.R. 724, 738 (1990) (Slip P.R. Offic. Trans. at 11). We do not read the Court's opinion as an absolute prohibition from fixing a fees award in an amount equal or similar to that paid by the prevailing party in legal fees. Rather, we take the Court's words to mean that the amount of the award may not be **automatically** determined by simply looking at what the prevailing party paid, without taking into consideration the degree of obstinacy displayed by the losing party, as well as a host of other factors. If after considering those factors the conduct of the obstinate party warrants it, then the court may determine the amount of the award to reflect the expense incurred by the prevailing party. This is such a case.

SAIC's objection to fees award requested by FSC on the basis that "it was [FSC] that unjustifiably delayed this case by moving for a continuance of the trial scheduled for February 18, 1995, under clearly false pretenses[,]" and that this continuance "was merely a strategy to avoid having to go to trial with [its] original experts[,]" (**Docket # 117, at 3**), is rather bold, and is—not surprisingly—unsupported by the record. We specifically rejected defendant's contention in *Fajardo*

---

5. In *Orta,* the Court simply determined a $60,000 fees award to be unreasonable, without even stating what the amount at issue was. *See* 131 D.P.R. at 259.

6. That this case was disposed of through summary judgment is irrelevant under the circumstances, since summary judgment was entered five years after the filing of the complaint. Moreover, the Court had to hold various hearings on the special master's reports and recommendations. (**Dockets # 103 and # 104**).

*Shopping I* that FSC had contributed to the unreasonable delay in the resolution of this case. As we stated then: "Defendant has failed to propound any evidence to demonstrate how, other than by requesting two continuances of the trial **for legitimate purposes,** plaintiff has in any way contributed to the unreasonable delays in the resolution of this case." 999 F.Supp. at 234 (emphasis added). To the contrary, we found that it was SAIC who had **"clearly engaged in one dilatory tactic after another . . . ."** *Id.* (emphasis added). By objecting to FSC's request on the same baseless grounds, SAIC has once again demonstrated its obstinacy.

**Attorney's Fees for Obstinate Conduct Displayed Prior to the Commencement of the Action**

■ As FSC correctly notes, the Supreme Court of Puerto Rico in *Raoca Plumbing v. Trans World Assurance Co.* held that in making the threshold determination of obstinacy, the trial court may, at its discretion, consider the conduct displayed by the parties before the filing of the complaint and before service upon the defendant has been effected. 114 D.P.R. 464, 467 (1983). In *Raoca,* the conduct in question included the defendant hiding to avoid service of process, collusion among the defendant and a bank to avoid attachment of the party's account for the purpose of securing satisfaction of judgment, and the defendant stubbornly refusing to settle the claim. *See id.* at 466–67. Interestingly enough, the defendant in *Raoca* agreed to settle immediately after being served. *See id.* at 468.

■ SAIC's argument that FSC's request for the fees incurred before the filing of the complaint is moot is in part correct. With regard to the threshold determination of obstinacy, FSC's request is moot because the Court has already made that determination. However, FSC's request is not moot with regard to the amount of the fees award, inasmuch as in computing it the court must first and foremost take into consideration the degree of the losing party's obstinacy. In ascertaining that degree, the losing party's conduct prior to the filing of the complaint is certainly relevant. However, we read the holding in *Raoca,* as the historical facts of the case suggest, as limited to circumstances where the conduct of the losing party nearly borders on fraud. SAIC's conduct prior to the filing of the complaint, while markedly obstinate, did not reach the degree of the conduct displayed by the offending party in *Raoca.* Thus, FSC's request for the fees incurred before the commencement of this action should be, and is hereby, denied.

For the foregoing reasons, plaintiff Fajardo Shopping Center, S.E.'s particularized request for attorney's fees (**Docket # 116**) is hereby **GRANTED.** Furthermore, plaintiff Fajardo Shopping Center, S.E.'s amplified request for attorney's fees (**Docket # 129**) is **GRANTED IN PART** and **DENIED IN PART.** Accordingly, defendant Sun Alliance Insurance Company of Puerto Rico, Inc. is hereby **ORDERED** to pay plaintiff Fajardo Shopping Center, S.E. $347,478.35 in attorney's fees.

**SO ORDERED.**