**TOP ENTERTAINMENT CORP.,
et al. Plaintiffs,**

v.

**Watsson Herbert TORREJON,
Defendant**

**No. CIV. 99–2095(JP).**

United States District Court,
D. Puerto Rico.

Dec. 16, 2004.

---

**8.** See also, Opposition (docket No. 17) and Reply (docket No. 23).

**9.** See also, Opposition (docket No. 38) and Reply (docket No. 41).

David Efrón, San Juan, PR, for Plaintiff.

Manuel R. López, Coral Gables, FL, Ramón L. Viñas Bueso, Guzmán & Steffens, San Juan, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

Before the Court is Defendant's motion for attorneys' fees pursuant to P.R. R. Civ. P. 44.1(d) (docket No. 95) and its supplement thereto (docket No. 106), Plaintiffs' motion to dismiss (docket No. 122); Plaintiffs' supplementary motion regarding Defendant's request for attorneys' fees (docket No. 126); Defendant's opposition to Plaintiffs' supplementary motion (docket No. 130); Plaintiffs' opposition to Defendant's original motion for attorneys' fees (docket No. 134); Defendant's second memorandum in support for its motion for attorneys' fees (docket No. 136); and Plaintiffs' expert report (docket No. 140).

On November 20, 2003, the United States Court of Appeals for the First Circuit issued its opinion in *Top Entm't Inc. v. Torrejon*, 351 F.3d 531 (1st Cir.2003), where it vacated this Court's Order of October 23, 2002 and ordered the Court to reconsider Defendant's motion for attorneys' fees under Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure. The Court will not further labor into the facts of this case, as they have been extensively discussed in both this Court's Order of October 23, 2002 (docket No. 105) and in the aforementioned decision by the First Circuit, and shall therefore limit itself to the instant facts.

After successfully defending an appeal which dismissed this case, counsel for Defendant filed a motion for attorneys' fees which the Court denied, finding that the First Circuit had already imposed sufficient sanctions in this case. On appeal, the First Circuit found that Plaintiffs and their counsel, David Efrón, Esq. filed and pursued frivolous claims against Defendant when they filed a complaint which asserted that María Ortega falsely purported to be the promoter representing entertainer Ricky Martin in a concert held in Peru in November 1998, claims which Mr. Efrón later admitted were completely false. The Court of Appeals also found that the filing of the complaint violated Fed.R.Civ.P. 11, and ordered this Court to reconsider its denial of the motion for attorneys' fees.

Upon reconsideration (docket No. 105), this Court found that, pursuant to Rule 44.1(d), Plaintiffs had acted with temerity and frivolousness when they filed a complaint containing false allegations, failed to amend the complaint according to the Court's Order, pursued this baseless claim over a two-year period, and then reversed their position. The Court then ordered Defendant to file with the Court a full accounting of the attorneys' fees charged during the litigation of this case, including the hours worked by Defendant's counsel and the actions performed. Defendant's counsel so complied. Having examined the information before it, the Court now turns to the issue of the amount of the award.

### II. ANALYSIS

#### A. Legal standard

 Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure, 32 P.R. Laws. Ann. Appendix III, states that, "[i]n the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum of attorneys' fees which the court decides corresponds to such conduct." P.R. R. Civ. P. 44.1(d), 32 P.R. Laws. Ann. Appendix III. The main pur-

pose of this rule is simply "to impose a penalty upon a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation." *Vicente Fernández Marino v. San Juan Cement Co.*, 118 D.P.R. 713, 118 P.R. Offic. Trans. 823, 830 (P.R.1987) (finding that the party that risks litigating a case in which negligence appears prima facie should thus assume liability for its actions). Acting obstinately or frivolously "is a concept that implies a misuse of legal procedures to foment or delay litigation and by doing so, to frustrate the payment of an uncontested obligation or to make a claim on a frivolous basis." *Ferrer Delgado v. Sylvia de Jesús*, 440 F.Supp. 979, 982 (D.Puerto Rico 1976). A finding of temerity is clearly warranted where a party has filed or pursued frivolous claims. *Id.* The Court must award attorneys' fees if it finds that a party has acted with temerity or frivolously. *See Fajardo Shopping Center v. Sun Alliance Insurance Co.*, 167 F.3d 1 (1st Cir.1999).

██ The First Circuit has stated that, according to the Puerto Rico Supreme Court, the "degree of obstinacy is the critical factor in determining whether attorneys' fees are warranted". *Tañón v. Muñiz*, 312 F.Supp.2d 143, 152 (1st Cir. 2004). Although P.R. R. Civ. P. 44.1(d) does not define the term "obstinately", this is a term of art which has been discussed at large by the courts. In particular, the Puerto Rico Supreme Court has stated that "obstinacy is an attitude which casts its shadow over the proceeding and which affects the sound operation and administration of justice. It also subjects the innocent litigant to the ordeal of the judicial process and unnecessary costs, and to retainment of professional services, including attorneys, with the usually exorbitant

burden to his pocket." *Fernández Marino*, 118 P.R. Offic. Trans. at 829, 1987 WL 448327. A party shall be found obstinate if it "engages in actions which (a) make necessary litigation which could have been avoided, (b) prolongs the litigation unnecessarily, or (c) requires the other party to incur expenses in the pursuit of avoidable tasks." *Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 24 (1st Cir.1994).

As a result of Defendant's success in his appeal from this Court's denial of attorneys' fees, he filed a request for attorneys' fees on appeal in the amount of $197,465.00, representing allegedly 773.8 hours of legal services performed on the case. Defendant's counsel duly filed the billing ledger pages detailing the dates, time spent, and subject matter of counsel's work, as well as an affidavit describing his experience and hourly rate. Although the motion was filed on September 30, 2002, it was not actually opposed by Plaintiffs until almost a full two years later, on August 16, 2004 (docket No. 122).

## B. Frivolousness, temerity, obstinacy and other matters

██ The criteria used to determine whether or not a party has acted with obstinacy are straightforward. The Supreme Court of Puerto Rico has consistently held that "nothing in the wording of ... Rule 44.1(d) allows the reasonable inference that the amount the obstinate or frivolous party shall bear must necessarily match the actual attorneys' fees paid by the prevailing party." *Corpak, Inc. v. Ramallo Bros. Printing, Inc.*, 125 D.P.R. 724, 738 (1990) (Slip P.R. Offic. Trans. at 11). *See also Santos Bermúdez v. Texaco P.R., Inc.*, 123 D.P.R. 351, 357 (1989); *Asociación de Condóminos v. Trelles Reyes*, 120 D.P.R. 574, 579, 1988 WL 580846 (1988). More problematic, however, is the fact that

no Court has adopted any specific method to aid courts in calculating fees awards, and therefore the criteria used to assess the amount of the award are not clear. *See Corpak,* 125 D.P.R. at 734. The Puerto Rico Supreme Court has instead held that trial courts "must bear in mind that the degree or intensity of the obstinate or frivolous conduct is the test or determining or critical factor to be considered when calculating the attorneys' fees that the obstinate or frivolous losing party shall bear . . . ." *Id.* at 738 (citations omitted) (Slip P.R. Offic. Trans. at 12). *See also Revlon Realistic, Inc. v. Las Américas Trust Co.,* 135 D.P.R. 363, 1994 WL 909203 (1994).

The District of Puerto Rico in the landmark case of *Fajardo Shopping Center v. Sun Alliance Ins. Co. of Puerto Rico,* 81 F.Supp.2d 331 (D.Puerto Rico 2000), has stated that obstinacy is measured by determining whether a party's behavior results in litigation which could have been avoided, if behavior prolongs litigation needlessly, or if it obliges the other party to embark on needless procedures. *Id.* at 335, *quoting Dopp v. Pritzker,* 38 F.3d 1239, 1253 (1st Cir.1994). It has further stated that consideration of a myriad of other factors is necessary to this analysis, such as "the nature of the action, the questions of law involved, the amount at issue, the time spent, the efforts and professional activity needed for the case and the skills and reputations of the lawyers involved". *See Fajardo Shopping Center,* 81 F.Supp.2d at 334, *quoting Corpak,* 125 D.P.R. at 738, Offic. Trans. at 11–12, 1990 WL 710162; *see also Velázquez Ortiz v. Universidad de Puerto Rico,* 128 P.R. Dec. 234, 238, 1991 WL 735405 (1991). With this in mind, the Court now turns to Plaintiffs' actions in this case.

■ The Court does not elaborate on the details of Plaintiffs' conduct, since the First Circuit has more than adequately summarized Plaintiffs' questionable conduct in the case at bar.

"In *Top Entm't Inc. v. Ortega,* 285 F.3d 115 (1st Cir.2002), this court addressed plaintiffs' appeal from that dismissal for failure to comply with the Initial Scheduling Order. This court noted that plaintiffs had made a complete about-face in the district court from the position stated in their complaint when they belatedly attempted to revise their allegations in response to the court's order to show cause. 285 F.3d at 117, 118. Furthermore, plaintiffs' counsel admitted that the allegations in the original complaint were false. *Id.* at 120. This court noted that it was 'apparent that the complaint violated Rule 11.' *Id.* at 118. We also noted that plaintiffs' counsel had made misrepresentations to the district court and had willfully disobeyed the district court's order. *Id.* at 119. Accordingly, we affirmed the dismissal and awarded double costs and attorneys' fees of $2,000 to defendant because plaintiffs' appeal was frivolous. *Id.* at 119–20.

... Plaintiffs did not pay the sums ordered by this court. On September 30, 2002, Watsson Hebert Torrejon, Ortega's assignee, filed a Motion to Compel Compliance with Mandate of First Circuit Court of Appeals and for Contempt.... On October 23, 2002, the district court ordered plaintiffs and their counsel to pay the sanctions imposed by this court by November 21, 2002 or face further sanctions. The district court denied the motion for contempt and denied defendant's application for the further fees that resulted from plaintiffs' failure to comply with this court's order. On November 20, plaintiffs and their counsel finally complied with this court's sanctions order." *Top Entm't Inc.,* 351 F.3d 531, 532 (1st Cir.2003).

The Court finds Plaintiffs' actions were indeed obstinate and frivolous. The Court cannot help but note that out of the three factors to be considered in the obstinacy determination, Plaintiff meets all of them. There is no denying that Plaintiffs admitted that the allegations in the original complaint, the very first document they filed with this Court, were false, a clear violation of Fed.R.Civ.P. 11, a behavior that Courts have generally agreed merits sanctions. *See Unanue–Casal v. Unanue–Casal,* 898 F.2d 839, 841–42 (1st Cir.1990) (holding that Rule 11 sanctions against counsel were warranted for filing frivolous removal petition with "no plausible legal basis" and for "improper purpose"); *Bolívar v. Pocklington,* 975 F.2d 28, 32 (1st Cir.1992) (affirming sanctions where counsel should have known that filing the action was not justified by existing law and that it unnecessarily multiplied proceedings … and characterizing the filing of the claim as "forum shopping").

The Court finds that, pursuant to the facts named above, Plaintiffs' behavior can be characterized as highly obstinate. The conclusion that this litigation could have been avoided, that litigation was needlessly prolonged or that Plaintiff embarked on needless procedures is more than clearly evidenced and cannot be seriously doubted by the end result of this case and the First Circuit's mandate of November 20, 2003.

The Court further finds that although the nature of the action and the questions of law involved were not complicated and that the amount at issue was not substantial, the time spent and the efforts and professional activity needed for the case can be adequately characterized as substantial. Although the Court finds that the hours charged by Defendant's attorneys appear to be high and duplicative at times—an issue which will be discussed more thoroughly below—this case was filed in September of 1999, over five years ago, and consists of 140 docketed entries. In addition to discovery, this case has twice gone to the Circuit Court on appeal for different reasons, and the record is replete with filings by Defendant detailing Plaintiffs' lack of cooperation and obstinacy during these proceedings, thus evidencing the considerable work product that had to be produced to defend this case. *See generally* docket Nos. 32, 40, 45, 54, 55, 60, 68.

Finally, the Court finds that although Defendant's lawyer is skillful, his reputation on this Island is not a key factor in this analysis, since his law practice takes place exclusively in the State of Florida. In light of the aforementioned analysis, the Court concludes that Defendant is entitled to a substantial amount of attorneys' fees. Taking all the necessary factors into consideration, the Court finds that **SIXTY THOUSAND DOLLARS ($60,000.00)** is an appropriate amount to compensate both Defendant's counsel for his time and effort and to sanction Plaintiffs' obstinate conduct.

### C. The hourly rate

However, if further justification for the figure awarded by the Court was necessary, the same figure would be reached by examining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, which is another method used by Courts in dealing with similar questions. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Complicating this approach however, is the fact that this case was filed in 1999, and thus, the Court had to scour billing records spanning five years.

Defendant's counsel asserts that he bills $250.00 an hour. Plaintiff has opposed this in light of counsel's lack of a judicial

clerkship experience, the fact that he has been practicing for only ten years, and that the current rate for equal services in Puerto Rico for attorneys with similar experience is much lower than $250.00 an hour. It has been clearly established, however, that the burden is on "the party requesting fees to establish such rates through evidence other than the affidavits of the attorney [herself]". *Bordanaro v. McLeod,* 871 F.2d 1151, 1166 (1st Cir. 1989), *cert. denied,* 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989); *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In other words, a party seeking attorneys' fees is required to present evidence other than the attorney's own affidavits regarding the prevailing hourly rate. *Bordanaro,* 871 F.2d at 1168. To this end, it would have been more helpful to the Court if Mr. López had filed affidavits from other attorneys indicating whether his requested rates were comparable to those charged by themselves and whether or not they were reasonable, instead of an affidavit merely outlining Mr. López's relevant experience. *See e.g., Jordan v. Multnomah County,* 815 F.2d 1258, 1263 n. 9 (9th Cir.1987).

The recent case of *Libertad v. Sánchez,* 134 F.Supp.2d 218 (D.Puerto Rico 2001) has proven particularly helpful to the Court in deciding the proper rate. In *Libertad,* a complex case involving alleged violations of 42 U.S.C. § 1985(3) (1988), the Racketeer Influenced and Corrupt Organizations Acts (RICO), 18 U.S.C. §§ 1961–68 (1994), and the Constitution and tort laws of Puerto Rico, the Court delved deeply into the subject of attorneys' fees and awarded a total of $109,862.00 in attorneys' fees.

The Court meticulously examined the records, and awarded Attorney Albisa a rate of $130.00 an hour. This hourly award was made to an attorney who had received her J.D. from Columbia University School of Law in 1989, who had clerked for a federal judge, and had then become a staff attorney at the Reproductive Freedom Project of the American Civil Liberties Union, where she was lead counsel or co-counsel in several cases involving reproductive rights.

In the same case, Attorney Jones was awarded fees at a rate of $130.00 an hour, to an attorney that had graduated from Yale Law School in 1993, had clerked for a United States District Judge and the Massachusetts Superior Court before joining the Center for Reproductive Law & Policy in 1996, and who then specialized in reproductive rights litigation.

Attorney Smith, who graduated from Yale Law School in 1991 and joined a large law firm after graduation before becoming a fellowship attorney with the Center for Reproductive Law & Policy in 1993, later became a staff attorney at CRLP when her fellowship ended in 1995. The Court found that Smith had participated in other cases involving reproductive rights, and that she had based her request on the hourly rates charged by private attorneys in Puerto Rico who have similar experience, and therefore found that $130.00 an hour was reasonable for her.

Attorney Berkowitz, who had been practicing law since 1972, specialized in civil rights litigation and criminal defense work in the federal courts, and had been lead counsel on several major civil rights cases, was awarded $190.00 an hour. Lastly, Attorney Vargas Acosta, who received her J.D. from the Interamerican University Law School in 1983, had fifteen years of experience in civil rights litigation and was an adjunct professor of civil rights litigation at the University of Puerto Rico School of Law, was awarded an hourly rate of $125.

▮ Following the *Libertad* standard, the Court finds that an award for $250.00

an hour is indeed excessive for the types of services performed in this case, in light of the complexity of the case, the attorney's experience and the prevailing rate in this jurisdiction. The Court finds that $125.00 is more in tune with the awards, rates and experience at issue in this case, regardless of the fact that Defendant's counsel resides in Florida. *See Brewster v. Dukakis*, 3 F.3d 488, 492 (1st Cir.1993) (stating that comparing the prevailing market rates in the relevant community is the correct starting point for determining the proper rates). Taking into account that Mr. López has been an attorney for eleven years, and at the time this case commenced, he had been so for only seven years, that he has no judicial clerkship experience, and that the prevailing rates in Puerto Rico for an attorney of similar experience in similar cases are substantially lower than the $250.00 Mr. López charges in Miami, Florida, where he resides and practices, the Court finds an hourly rate of $125.00 for Mr. López's work to be reasonable.

### D. Actual hours worked

Finally, the Court turns to the issue of the actual hours worked. The Court should not attempt a "comprehensive accounting of each asserted expenditure of time and funds, annotated with our view of the labor's real worth." *Ackerley Communications of Mass., Inc. v. City of Somerville*, 901 F.2d 170, 171 (1st Cir. 1990). However, if further justification for the aforementioned hourly rate was necessary, the Court did exactly that. It scoured the record meticulously, and found many instances of duplicated work, or simply that the amount of hours expended appeared on their face to be excessive. For instance, counsel spent an inordinate amount of time—37.10 hours—drafting an Initial Scheduling Conference Memorandum, which although thorough, seems excessive. Likewise, he spent 52.60 hours drafting a Memorandum in response to Plaintiffs' motion in compliance with order to show cause. Finally, a heroic 91.21 hours were spent in drafting a motion for sanctions, which albeit being 35 pages long and well drafted, cannot possibly be granted. Other duplicative efforts, like 6.80 hours expended over a total of three days to draft a motion for extension of time (6/15–6/18, 2001) seem excessive and have also warranted a reduction. In light of the aforementioned situation, the Court has reduced the total amount of hours worked in this case to approximately 477 hours, against the $125.00 an hour rate. This adds up to a rounded figure of $60,000.00 for attorneys' fees. In light of the fact that the factual background and issues of law involved in the case were not complex, the Court finds that 477 hours on this case is neither unreasonable nor excessive.

This figure is further bolstered by the landmark *Fajardo Shopping Center* case, where, although the Court therein awarded the full amount of attorneys' fees sought—$273,049.55—it did so: 1) to a large firm with a widespread reputation throughout the island for the quality of its work and fine attorneys; and 2) for over 2,000 hours of time spent on the case. *Fajardo Shopping*, 81 F.Supp.2d 331. This is a far cry from the alleged 773 hours spent on this case by a small Florida firm unknown in Puerto Rico.

### III. CONCLUSION

For the aforementioned reasons, the Court herein **GRANTS** Defendant's motion for attorneys' fees, and awards Defendant **SIXTY THOUSAND DOLLARS** (**$60,000.00**) in attorneys' fees, to be paid within thirty (30) days from the entry of this Order.

**IT IS SO ORDERED.**